1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 12, 2020

SEAN F. McAVOY, CLERK

4

5    **UNITED STATES DISTRICT COURT**

6    **EASTERN DISTRICT OF WASHINGTON**

7

| | |
|---|---|
| KRISTINA B.,[1] | No. 1:19-cv-03278-MKD |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 14, 16 |

8

9

10

11

12

13    Before the Court are the parties' cross-motions for summary judgment. ECF

14    Nos. 14, 16. The parties consented to proceed before a magistrate judge. ECF No.

15    7. The Court, having reviewed the administrative record and the parties' briefing,

16

17    _____

18    [1] To protect the privacy of plaintiffs in social security cases, the undersigned

19    identifies them by only their first names and the initial of their last names. *See*

20    LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 14, and grants Defendant's motion, ECF No. 16.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

1  rational interpretation, [the court] must uphold the ALJ's findings if they are

2  supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

3  F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

4  ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

5  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

6  *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's

7  decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

8  *Sanders*, 556 U.S. 396, 409-10 (2009).

9  **FIVE-STEP EVALUATION PROCESS**

10         A claimant must satisfy two conditions to be considered "disabled" within

11  the meaning of the Social Security Act. First, the claimant must be "unable to

12  engage in any substantial gainful activity by reason of any medically determinable

13  physical or mental impairment which can be expected to result in death or which

14  has lasted or can be expected to last for a continuous period of not less than twelve

15  months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's

16  impairment must be "of such severity that he is not only unable to do his previous

17  work[,] but cannot, considering his age, education, and work experience, engage in

18  any other kind of substantial gainful work which exists in the national economy."

19  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

20

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

ORDER - 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

ORDER - 5

education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On April 21, 2014 Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging a disability

onset date of March 1, 2014.  Tr. 80, 184-94.  The applications were denied

initially and on reconsideration.  Tr. 124-27; Tr. 132-43.  Plaintiff appeared before

an administrative law judge (ALJ) on March 3, 2016.  Tr. 60-77.  In April 2016,

the ALJ denied Plaintiff's claim.  Tr. 38-56.  Plaintiff appealed the denial to the

Appeals Council and then this Court, which resulted in a remand.  Tr. 797-826.

ORDER - 6

Plaintiff appeared before the ALJ for a remand hearing on June 26, 2019.  Tr. 739-68.  On August 21, 2019, the ALJ again denied Plaintiff's claim.  Tr. 712-38.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through December 31, 2018, has not engaged in substantial gainful activity since March 1, 2014.  Tr. 718.  At step two, the ALJ found that Plaintiff has the following severe impairments: spinal impairments, gastrointestinal impairments (including colitis/ileitis, irritable bowel syndrome, pancreatitis, diverticulitis, and/or gastroesophageal reflux disease), obesity, depressive disorders, and anxiety disorders (including post-traumatic stress disorder).  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  *Id.*  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can understand, remember and carry out simple instructions.  She can exercise simple workplace judgment and can perform work that is learned on the job in less than 30 days by short demonstration and practice or repetition.  She can stay on task at least 90% of the workday, so long as there are customary breaks and rest periods.  She can respond appropriately to supervision, but should not be required to work in close coordination with coworkers where teamwork is required.  She can work in jobs that require only casual interaction or contact with the general public.  She can deal with occasional changes in the work environment.

Tr. 720.

ORDER - 7

At step four, the ALJ found Plaintiff is unable to perform any of her past relevant work.  Tr. 730.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as housekeeper, office helper, mail room clerk, order clerk, escort vehicle clerk, and document preparer.  Tr. 731.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of March 1, 2014, through the date of the decision. Tr. 732.

Per 20 C.F.R. §§ 404.984 and 416.1484, the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims.

2. Whether the ALJ properly evaluated the medical opinion evidence;

3. Whether the ALJ properly evaluated lay witness evidence; and

ECF No. 14 at 2.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 14 at 17-21. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.

ORDER - 9

*Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

ORDER - 10

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 721.

### 1. Inconsistent Statements

The ALJ found Plaintiff made inconsistent statements about her work history, symptoms, and resulting limitations.  *Id.*  In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

First, the ALJ noted Plaintiff made inconsistent statements about her reason for stopping work.  Tr. 721.  While Plaintiff first reported she stopped working due to anxiety and panic, she later reported her employment ended due to not being able to get along with others, and later testified her work ended due to her pain symptoms.  Tr. 66-68, 207, 225, 232, 721.  Additionally, while Plaintiff alleges disability in part because of her PTSD and depression, she has been treated for

1  these conditions since at least 2009 and was able to maintain gainful employment

2  for several years despite her conditions.  Tr. 721.

3         Second, the ALJ found Plaintiff made inconsistent consistent statements

4  about her symptoms and limitations.  *Id.*  While Plaintiff alleged limitations in

5  every area of functioning in her May 2014 function report, she did not describe any

6  physical impairments or symptoms.  *Id.* (citing Tr. 225-32).  In 2016, Plaintiff

7  alleged her pain symptoms were the reason she could not work.  Tr.66-68, 721.

8  The ALJ also noted Plaintiff made inconsistent statements about her weight and

9  efforts to lose weight.  Tr. 724.  This was a clear and convincing reason to reject

10  Plaintiff's symptom claims.

11         *2. Objective Medical Evidence*

12         The ALJ found Plaintiff's symptom claims were inconsistent with the

13  objective medical evidence.  Tr. 722-27.  An ALJ may not discredit a claimant's

14  symptom testimony and deny benefits solely because the degree of the symptoms

15  alleged is not supported by objective medical evidence.  *Rollins v. Massanari,* 261

16  F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir.

17  1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400

18  F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a

19  relevant factor, along with the medical source's information about the claimant's

20  pain or other symptoms, in determining the severity of a claimant's symptoms and

ORDER - 12

their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

First, the ALJ found the objective evidence does not support Plaintiff's allegations of disabling physical limitations.  Tr. 722-25.  The medical records demonstrate Plaintiff generally had normal abdominal examinations and had improvement in her abdominal pain with treatment and dietary changes.  Tr. 276-77, 315, 327, 330-31, 346, 362, 385, 400, 722-25.  Plaintiff's September 2014 colonoscopy showed only mild chronic colitis/ileitis, abdominal imaging also showed only mild inflammation, and Plaintiff had a normal gastric emptying study in March 2015.  Tr. 723 (citing Tr. 454, 472, 600, 620).

There are minimal references to spinal pain, and the medical records note Plaintiff reported "moderate" or less back pain, and she generally had normal gait, range of motion and motor functioning, and denied having weakness or balance problems.  Tr. 554, 650-51, 653, 725-26, 1342, 1397, 1414, 1530, 1626.  A June 2015 lumbar spine MRI showed minimal facet degeneration at L4-5, and marked degenerative changes at L5-S1 but no central stenosis.  Tr. 725 (citing Tr. 609).  Despite claims of disabling pain, the ALJ noted Plaintiff reported treating her back pain with only Ibuprofen for a period of time, and she was not compliant with pain medication management.  Tr. 725-26 (citing Tr. 650, 1432, 1437).

1    Second, the ALJ found the objective evidence does not support Plaintiff's

2  allegations of disabling mental health symptoms.  Tr. 722- 23.  Medical records

3  demonstrate Plaintiff occasionally had abnormal mental status findings such as a

4  flat/blunt affect, but she generally demonstrated normal memory, behavior, eye

5  contact, speech, thoughts, concentration, psychomotor activity, and intelligence,

6  and fair/good judgment.  Tr. 722-23 (citing, e.g., Tr. 308-10, 538-41, 545-48,

7  1124-25, 1132).  Plaintiff also generally had a normal mood and affect.  Tr. 722

8  (citing Tr. 279, 282).  Further, Plaintiff did not seek significant mental health

9  treatment during the relevant period and generally reported doing "okay,"

10  "alright," "pretty good," and having no psychiatric complaints.  Tr. 723 (citing Tr.

11  1027, 1058, 1062).  Plaintiff also reported improvement with psychiatric

12  medication and reported she had "controlled" anxiety.  Tr. 722-23 (citing Tr. 525).

13  Plaintiff reported minimal use of her anti-anxiety medication for "only a few panic

14  attacks."  Tr. 722 (citing Tr. 482, 487).

15    Plaintiff argues the law of the case doctrine prohibits the Court from

16  considering this issue.  ECF No. 14 at 19.  The law of the case doctrine applies in

17  the Social Security context.  *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016).

18  Under the law of the case doctrine, a court is precluded from revisiting issues

19  which have been decided—either explicitly or implicitly—in a previous decision

20  of the same court or a higher court.  *Hall v. City of Los Angeles*, 697 F.3d 1059,

ORDER - 14

1067 (9th Cir. 2012).  The doctrine of the law of the case "is concerned primarily

with efficiency, and should not be applied when the evidence on remand is

substantially different, when the controlling law has changed, or when applying the

doctrine would be unjust."  *Stacy*, 825 F.3d at 567.  However, additional evidence

has been considered, including hundreds of pages of additional medical records,

and additional testimony from Plaintiff, resulting in a new analysis from the ALJ.

As such, the law of the case doctrine does not bar reconsidering this issue as the

evidence is substantially different.  This was a clear and convincing reason to

reject Plaintiff's symptom claims.

*3.  Activities of Daily Living*

The ALJ found Plaintiff's activities of daily living were inconsistent with

her symptom allegations.  Tr. 726-27.  The ALJ may consider a claimant's

activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a

claimant can spend a substantial part of the day engaged in pursuits involving the

performance of exertional or non-exertional functions, the ALJ may find these

activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at

603; *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark

room in order to be eligible for benefits, the ALJ may discount a claimant's

symptom claims when the claimant reports participation in everyday activities

indicating capacities that are transferable to a work setting" or when activities

ORDER - 15

1    "contradict claims of a totally debilitating impairment." *Id.* at 1112-13.  The

2    ability to care for others without help has been considered an activity that may

3    undermine claims of totally disabling pain. *Rollins,* 261 F.3d at 857.  However, if

4    the care activities are to serve as a basis for the ALJ to discredit the Plaintiff's

5    symptom claims, the record must identify the nature, scope, and duration of the

6    care involved and this care must be "hands on" rather than a "one-off" care

7    activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017). .

8         While Plaintiff alleged she is unable to leave her home without feeling faint,

9    she reported providing daily transportation to three children and her husband,

10   preparing meals daily for up to nine people, and handling all of the shopping for

11   the household.  Tr. 727 (citing Tr. 225, 560, 605).  Plaintiff reported exercising for

12   up to sixty minutes per day, including walking and bicycling, along with normal

13   daily activities including yardwork, and reported using a lot of stairs.  Tr. 727

14   (citing Tr. 958-59, 981, 999, 1398, 1714).  Plaintiff repeatedly reported being very

15   busy, which she stated prevented her from being able to engage in more

16   counseling.  Tr. 727 (citing Tr. 302, 1092).  Plaintiff also reported "doing a lot of

17   moving and lifting" in July and August 2014.  Tr. 727 (citing Tr. 465).  Plaintiff

18   reported needing to arrange childcare for her three dependent children for the

19   period she would be undergoing bariatric surgery in 2017.  Tr. 727 (citing Tr. 965).

20   After her bariatric surgery, Plaintiff reported improvement in her ability to walk.

ORDER - 16

Tr. 727 (citing Tr. 1700).  There is sufficient reference in the record to support

finding Plaintiff engages in care for her children on a regular basis, including

cooking and providing daily transportation for them.  Tr. 727.  This was a clear and

convincing reason to reject Plaintiff's symptom claims.  As such, Plaintiff is not

entitled to remand on these grounds.

## B. Medical Opinion Evidence

Plaintiff contends the ALJ erred in considering the opinions of Amy

Teerink, D.O., and Melissa Belding, M.S.  ECF No. 14 at 8-15.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight

to opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of

nonspecialists."  *Id.* (citations omitted).

ORDER - 17

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (alteration in original); *see* 20 C.F.R. §§ 404.1513, 416.913 (2013).[2] However, an ALJ is required to

---

[2] The regulation that defines acceptable medical sources is found at 20 C.F.R. §§ 404.1502, 416.902 for claims filed after March 27, 2017. The Court applies the regulation in effect at the time the claim was filed.

consider evidence from non-acceptable medical sources, such as therapists.  20
C.F.R. §§ 404.1513(d), 416.913(d) (2013).[3]  An ALJ may reject the opinion of a
non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*,
763 F.3d at 1161.

### 1.  Dr. Teerink

Dr. Teerink, Plaintiff's primary care physician, provided an opinion on April
30, 2015 regarding Plaintiff's functioning.  Tr. 497-98.  Dr. Teerink diagnosed
Plaintiff with left upper quadrant pain/gastritis, anterolisthesis/back pain, and
anxiety disorder.  Tr. 497.  Dr. Teerink opined working on a regular basis would
cause Plaintiff's condition to deteriorate as stress can worsen her gastrointestinal
symptoms and lifting and sitting can worsen her spinal symptoms, and Plaintiff
would miss four or more days per month.  Tr. 498.  The ALJ gave Dr. Teerink's
opinion minimal weight.  Tr. 728.  As Dr. Teerink's opinion regarding any
functional limitations is contradicted by the opinions of Carla van Dam, Ph.D., Tr.
94-95, Wayne Hurley, M.D., Tr. 117, and Jan Lewis, Ph.D., Tr. 119-21, the ALJ

_____

[3] The regulation that requires an ALJ's consider opinions from non-acceptable
medical sources is found at 20 C.F.R. §§ 404.1502c, 416.920c for claims filed after
March 27, 2017.  The Court applies the regulation in effect at the time the claim
was filed.

1  was required to give specific and legitimate reasons, supported by substantial

2  evidence, to reject the contradicted portions of the opinion.  *See Bayliss*, 427 F.3d

3  at 1216.  This Court previously found Dr. Teerink's opinion that Plaintiff would

4  miss four or more days per month was uncontradicted and thus the ALJ was

5  required to give clear and convincing reasons to reject that portion of the opinion.

6  Tr. 809-10.

7      First, the ALJ found Dr. Teerink's opinions were inconsistent with the

8  objective evidence.  Tr. 728.  A medical opinion may be rejected if it is

9  unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of*

10  *Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957;

11  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*,

12  981 F.2d 1016, 1019 (9th Cir. 1992).  An ALJ may discredit physicians' opinions

13  that are unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.

14  Moreover, an ALJ is not obliged to credit medical opinions that are unsupported by

15  the medical source's own data and/or contradicted by the opinions of other

16  examining medical sources.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

17  2008).

18      Regarding Plaintiff's back impairment, the ALJ found that while Dr.

19  Teerink's opinion indicated Plaintiff's back impairment would be impacted by

20  working, the ALJ found the medical records do not contain any evidence of a

ORDER - 20

spinal impairment at the time of Dr. Teerink's opinion.  Tr. 728.  During the period

prior to Dr. Teerink rendering her opinion, the medical records contain only two

complaints from Plaintiff of back pain.  In July 2014, when Plaintiff was seen for

abdominal pain and diarrhea, she reported back pain with movement.  Tr. 327.  At

the visit, Plaintiff had no tenderness or pain on palpation, and had normal spinal

alignment.  *Id.*  In March and April 2015, Plaintiff reported during medication

management appointments that she had a disc disease and chronic back pain.  Tr.

530, 535.  Despite these complaints of back pain, the records do not contain any

objective evidence of Plaintiff's back impairment prior to Dr. Teerink's opinion.

Plaintiff points to January 2015 imaging to demonstrate the existence of her spine

impairment at the time of Dr. Teerink's opinion.  ECF No. 14 at 4, 11 (citing Tr.

620).  However, the January 2015 imaging consisted of an abdominal CT

performed due to abdominal pain, nausea, and diarrhea; the spinal abnormalities

were only incidental findings.  Tr. 723 (citing Tr. 720).  Plaintiff also points to

abnormal physical findings, ECF No. 4 at 11, however the findings are from

examinations that took place after Dr. Teerink rendered her opinion.  The ALJ

noted that one month after Dr. Teerink's opinion, Plaintiff reported constant back

pain for the first time to Dr. Chang, but Dr. Chang found Plaintiff had a normal

gait, normal leg strength, and negative straight leg raise.  *Id.* (citing Tr. 650-51).

1    The ALJ also noted that Plaintiff reported taking only Ibuprofen for her reportedly

2    disabling spinal impairment.  Tr. 728 (citing Tr. 650-51).

3         Regarding Plaintiff's gastrointestinal symptoms, this Court previously found

4    there was objective evidence that demonstrated Plaintiff experienced ongoing

5    painful gastrointestinal symptoms, consistent with Dr. Teerink's opinion.  Tr. 808

6    (citing Tr. 325-27, 453, 459, 465).  The ALJ has now added further analysis of the

7    evidence.  While Dr. Teerink opined stress would increase Plaintiff's

8    gastrointestinal symptoms, the ALJ found the medical records demonstrate

9    Plaintiff had no more than mild abdominal tenderness, and otherwise "consistently

10   unremarkable" gastrointestinal and physical findings, and generally was seen as

11   having a normal mood/affect and not being in distress.  Tr. 728.  In February 2014,

12   Plaintiff reported improvement with dietary changes and reported overall feeling

13   better without daily pain.  Tr. 286.  She was seen for follow-up for an emergency

14   room visit for abdominal pain and diarrhea, though she had a normal abdominal

15   examination and the provider thought the symptoms may be due to a virus.  Tr.

16   284-85.  In March 2014, Plaintiff was seen at an emergency department for

17   abdominal pain and diarrhea, though she then had improvement in her symptoms.

18   Tr. 282.  In April 2014, Plaintiff was seen in the emergency department for panic

19   attacks, during which she reported nausea with stress, Tr. 279, and Plaintiff had

20   continued stomach pain in May 2014 though she had a normal abdominal

ORDER - 22

examination, and she was not in acute distress at that appointment, Tr. 276.  In July 2014, Plaintiff reported decreasing emergency department visits but continued anxiety, and she was observed as having an anxious mood and affect.  Tr. 487.

The ALJ also found Plaintiff's symptoms improved with treatment.  Tr. 728-29.  While Plaintiff had some ongoing abdominal and gastrointestinal symptoms despite working on her diet, the medical records demonstrate Plaintiff had improvement with treatment.  *Id.*  An ALJ may discredit physicians' opinions that are unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.  Plaintiff reported improvement in her gastrointestinal symptoms with dietary changes and reported overall feeling better without daily pain.  Tr. 286.  The ALJ further noted that Plaintiff reported treating her spinal impairment only with ibuprofen.  Tr. 728 (citing Tr. 650).  Dr. Teerink also opined Plaintiff's prognosis was "good with treatment."  Tr. 498, 728.  Plaintiff reported improvement in her anxiety with medication, and reported less panic symptoms with few panic attacks, resulting in being able to avoid emergency room visits.  Tr. 482.  The ALJ's finding that Dr. Teerink's opinions were inconsistent with the objective evidence is supported by substantial evidence and was a clear and convincing reason to reject the opinion that Plaintiff would miss four or more days in a month, thereby also satisfying the specific and legitimate standard applicable to the remainder of Dr. Teerink's opinion.

ORDER - 23

1         Second, the ALJ found Dr. Teerink's opinions relied heavily on Plaintiff's

2 subjective reports.  Tr. 728.  The Ninth Circuit in *Ghanim* contemplated that

3 medical sources rely on self-reports to varying degrees and held that an ALJ may

4 reject a medical source's opinion as based on unreliable self-reports only when the

5 medical source relied "more heavily" "on a patient's self-reports than on clinical

6 observations."  763 F.3d at 1162.  The ALJ found Dr. Teerink relied on Plaintiff's

7 self-report because Dr. Teerink's records do not contain any evidence of a spinal

8 impairment, and there is no evidence of complaints of back pain until May 2015,

9 one month after Dr. Teerink rendered her opinion.  Tr. 728.  In May 2015, Plaintiff

10 alleged she had a disabling spinal impairment, though she had normal gait,

11 strength, negative straight leg raise, and 60 degree forward flexion.  Tr. 728 (citing

12 Tr. 649-50).

13         While the ALJ found there was not evidence of a back impairment at the

14 time of Dr. Teerink's April 2015 opinion, Plaintiff argues there is evidence of the

15 impairment.  ECF No. 14 at 11 (citing Tr. 609, 620, 651, 654-56, 949, 1908, 2048).

16 Plaintiff reported back pain in July 2014, Tr. 327, and an abdominal CT in January

17 2015 contained an incidental finding that Plaintiff had "prominent spondylosis at

18 the lumbosacral junction with grade II anterolisthesis of L5 on S1," with bilateral

19 pars defects, Tr. 620.  However, Dr. Teerink stated Plaintiff had not been seen for

20 her back pain.  Tr. 1781.

One month after Dr. Teerink's opinion, Plaintiff was seen by Michael Chang, MD, a specialist, for a consult. Tr. 650. Plaintiff reported back pain that had begun four years prior, and worsened by bending, climbing, lifting, walking, standing, sitting, and pushing, and the physical examination showed she had limited range of motion with pain in her lumbar spine. Tr. 650-51. However, the records do not contain any ongoing complaints of back pain until May 2015. Tr. 728. Plaintiff contends Dr. Teerink's opinion regarding Plaintiff's back impairment was not based on her self-report because the opinion is consistent with evidence from the time period after she rendered her opinion. ECF No. 14 at 11. However, Dr. Teerink did not have access to the later evidence at the time she rendered her opinion. Further, while Plaintiff points to evidence she argues is consistent with Dr. Teerink's opinion, from 2015 through 2018, Plaintiff continued to have largely unremarkable examination findings, with a normal gait, sensation, strength, and range of motion, though she had occasional abnormalities such as decreased range of motion. Tr. 725-26 (citing, e.g., Tr. 512-13, 553, 653-56, 1108, 1432-39, 1912). In 2019, Plaintiff underwent surgery for her back impairment, although the ALJ noted that even leading up to the surgery, Plaintiff's examinations did not demonstrate disabling limitations, as while she had some abnormalities, she reported mowing her lawn, and had continued normal gait and full strength. Tr. 726, 1397-99, 1908-09, 2048.

ORDER - 25

While  Dr. Teerink cited to Plaintiff's abnormal gastrointestinal findings, abnormal CT, and multiple emergency visits for anxiety as evidence to support her opinion, Tr. 497, as discussed *supra,* Plaintiff routinely had normal abdominal examinations and was generally observed as having normal mood and affect, Tr. 728.  The ALJ's finding that Dr. Teerink's opinions were based too heavily on Plaintiff's self-report is supported by substantial evidence and was a clear and convincing reason to reject the opinion that Plaintiff would miss four or more days in a month, thereby also satisfying the specific and legitimate standard applicable to the remainder of Dr. Teerink's opinion.

Third, the ALJ found Dr. Teerink's opinion that Plaintiff was unable to reliably perform daily activities was inconsistent with Plaintiff's activities of daily living.  Tr. 729.  An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  The ability to care for young children without help has been considered an activity that may undermine claims of totally disabling pain.  *Rollins,* 261 F.3d at 857.  However, an ALJ must make specific findings before relying on childcare as an activity inconsistent with disabling limitations.  *Trevizo*, 871 F.3d at 675-76.

The ALJ found Plaintiff's ability to perform household chores and to transport her kids to school and her husband to work on a daily basis, was

ORDER - 26

inconsistent with Dr. Teerink's opinion.  Tr. 729 (citing Tr. 302, 482, 512, 560, 605, 965, 1092, 1398).  The cited records include Plaintiff reporting she was "busy and stressed by all that her life is requiring of her,"  Tr. 302, and in another appointment she reported she was overwhelmed with appointments, Tr. 482. Plaintiff reported providing some childcare for her children, and needing to not be too sedated at night so she can hear her children, and is noted as a stay at home mom.  Tr. 512, 965.  Plaintiff reported additional family members moved into her home, and that she would be busy with her children being out of school soon.  Tr. 1092.  Plaintiff reported stopping at McDonald's on her way home from taking her husband to work, cooking dinner for her family members, handling the grocery shopping, and being too busy to work on her goals.  Tr. 560, 605.  On one occasion, Plaintiff reported worsening back pain when she fell in a pothole while mowing her lawn.  Tr. 1398.  Plaintiff also reported exercising for 30 to 60-minutes per day to lose weight so she could have bariatric surgery and then receive back surgery.  Tr. 727, 1714, 1804, 1820.  While Plaintiff argues her activities are not inconsistent with Dr. Teerink's opinion that she would miss four or more days of work due to her symptoms, ECF No. 14 at 12, the sum of Plaintiff's activities demonstrate a higher level of functioning than is reflected in Dr. Teerink's opinion. The ALJ's finding that Plaintiff's activities of daily living are inconsistent with Dr. Teerink's opinion that Plaintiff could not reliably perform daily activities is

1 supported by substantial evidence and was a clear and convincing reason to reject

2 the opinion.

3       Fourth, the ALJ found the State agency opinions were more consistent with

4 the record as a whole than Dr. Teerink's opinions.  Tr. 729.  The opinion of a

5 nonexamining physician may serve as substantial evidence if it is supported by

6 other evidence in the record and is consistent with it.  *Andrews,* 53 F.3d at 1041.

7 Other cases have upheld the rejection of an examining or treating physician based

8 in part on the testimony of a non-examining medical advisor when other reasons to

9 reject the opinions of examining and treating physicians exist independent of the

10 non-examining doctor's opinion.  *Lester,* 81 F.3d at 831 (citing *Magallanes v.*

11 *Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results,

12 contrary reports from examining physicians and testimony from claimant that

13 conflicted with treating physician's opinion)); *Roberts v. Shalala,* 66 F.3d 179, 184

14 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which

15 conflicted with his own written report and test results).  Thus, case law requires not

16 only an opinion from the consulting physician but also substantial evidence (more

17 than a mere scintilla but less than a preponderance), independent of that opinion

18 which supports the rejection of contrary conclusions by examining or treating

19 physicians.  *Andrews,* 53 F.3d at 1039.

20

1    The ALJ gave greater weight to the opinions of the State agency consultants,

2    whose opinions he found more consistent with the record as a whole.  Tr. 729.  The

3    ALJ's reliance on the State agency opinions in rejecting Dr. Teerink's opinions is

4    supported by substantial evidence as the Court finds the ALJ's other reasons for

5    rejecting the opinions are supported by the record for the reasons discussed *supra*.

6    As such, the ALJ gave clear and convincing reasons to reject Dr. Teerink's opinion

7    that Plaintiff would miss four or more days per month, and gave specific and

8    legitimate reasons, supported by substantial evidence, to reject the remainder of

9    Dr. Teerink's opinion.

10    *2.  Ms. Belding*

11    In February 2015, Ms. Belding, Plaintiff's counselor, completed a

12    questionnaire regarding Plaintiff's functioning.  Tr. 493-95.  Ms. Belding opined

13    Plaintiff has no significant limitation in maintaining socially appropriate behavior

14    and adhering to standards of neatness, and being aware of normal hazards and

15    taking appropriate precautions; mild limitations in sustaining an ordinary routine

16    without special supervision, interacting with the general public, and getting along

17    with coworkers without distracting them or exhibiting behavioral extremes;

18    moderate limitations in remembering locations and procedures,

19    understanding/remembering very short and simple instructions, understanding and

20    remembering detailed instructions, working in coordination with or proximity to

ORDER - 29

others without being distracted by them, making simple work-related decisions,

asking simple questions or requesting assistance, responding appropriately to

changes in the work setting, and setting realistic goals or making plans

independently of others; marked limitations in carrying out very short simple

instructions and detailed instructions, performing activities within a schedule,

maintaining regular attending and being punctual, accepting instructions and

responding appropriately to criticism; and severe limitations in maintaining

attention/concentration for extended periods, completing a normal

workday/workweek without interruptions from psychologically based symptoms

and performing at a consistent pace without an unreasonable number and length of

rest periods, and traveling to unfamiliar places or using public transportation.  Tr.

493-95.  Ms. Belding further opined Plaintiff has marked restriction of activities of

daily living, and extreme limitations in maintaining social functioning and

maintaining concentration, persistence or pace; Plaintiff would be off-task 21 to 30

percent of a workweek, and she would miss four or more days per month of work.

Tr. 495.  The ALJ gave Ms. Belding's opinion minimal weight, except to agree

Plaintiff has no to mild limitations in maintaining appropriate behavior, getting

along with coworkers, interacting with the public, and sustaining an ordinary

routine.  Tr. 729.  As Ms. Belding is not an acceptable medical source, the ALJ

1   was required to give germane reasons to reject her opinion.  *See Ghanim*, 763 F.3d

2   at 1161.

3       First, the ALJ found Ms. Belding's opinion inconsistent with Plaintiff's

4   activities of daily living.  Tr. 730.  An ALJ may discount a medical source opinion

5   to the extent it conflicts with the claimant's daily activities.  *Morgan*, 169 F.3d at

6   601-02.  The ALJ found Ms. Belding's moderate to severe limitations to be

7   inconsistent with Plaintiff's reports of being "busy" with a wide range of

8   household and domestic activities, including the ability to take daily trips outside

9   of her home to transport family members and to engage in a wide range of

10  household activities.  Tr. 730.  Plaintiff reported cooking for nine people, handling

11  all the household shopping, providing childcare for her kids and being too

12  busy/tired to work on her counseling goals, and she reported taking her husband to

13  work daily and stopping at McDonalds, and feeling better since getting into a

14  better school routine for her kids.  *Id.* (citing Tr. 482, 514, 560, 605).  As discussed

15  *supra,* the ALJ's finding that Plaintiff's activities of daily living are inconsistent

16  with a disabling opinion is supported by substantial evidence.

17      Second, the ALJ found Ms. Belding's opinion is internally inconsistent and

18  inconsistent with the objective medical evidence.  Tr. 729.  Relevant factors to

19  evaluating any medical opinion include the amount of relevant evidence that

20  supports the opinion, the quality of the explanation provided in the opinion, and the

ORDER - 31

1    consistency of the medical opinion with the record as a whole. *Lingenfelter v.*

2    *Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th

3    Cir. 2007). Moreover, a physician's opinion may be rejected if it is unsupported

4    by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875

5    (9th Cir. 2003). The ALJ found Ms. Belding's opinion internally inconsistent as

6    she opined Plaintiff had no to mild limitations in several areas of functioning, yet

7    found Plaintiff had moderate limitations in several related areas of functioning, and

8    marked to severe limitations in others. Tr. 729. While Ms. Belding found Plaintiff

9    had no to mild limitations in three areas of social functioning, and moderate to

10    marked in the other two areas of social functioning, Tr. 494, she found Plaintiff

11    overall had extreme limitations in maintaining social functioning, Tr. 495. The

12    ALJ also found Ms. Belding's opinion unsupported by the records from her

13    counseling sessions, which largely do not contain detailed examinations, and

14    generally contain notes of Plaintiff having normal affect, memory, and behavior.

15    Tr. 729 (citing Tr. 302-06, 308-10, 538-41, 545-48). Plaintiff argues the records

16    support Ms. Belding's opinion, but Plaintiff cites only to her self-reported

17    symptoms, with one reference to notes that indicate Plaintiff had a constricted

18    affect, impaired memory, concentration, and attention, and abnormal thoughts.

19    ECF No. 14 at 13-14 (citing Tr. 279, 306, 310, 500, 521, 535, 538, 543). This was

20    a germane reason to reject Ms. Belding's opinion.

ORDER - 32

Third, the ALJ found Ms. Belding provided no support for the limitations. Tr. 729.  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole.  *Lingenfelter,* 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  Therefore, a medical opinion may be rejected by the ALJ if it inadequately supported by medical findings.  *Bray*, 554 F.3d at 1228.  Ms. Belding's opinion primarily consists of checked boxes, and she did not cite to any objective evidence in support of her opinion.  Tr. 729 (citing Tr. 493-96).  Ms. Belding's only written response on the otherwise checkbox form states Plaintiff's mental health diagnoses are treatable with therapy, but without therapy the environment can cause significant decompensation.  Tr. 495.  As Ms. Belding did not provide an explanation for her opinion, this was a germane reason to reject the opinion.

Fourth, the ALJ found the limitations inconsistent with the records demonstrating effective mental health care after the assessment.  Tr. 729.  An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195.  After Ms. Belding rendered her opinion, Plaintiff reported improvement with medication, a stable mood, improved anger, and denied panic/anxiety or problematic depressive symptoms, and although there are occasional reported symptoms or abnormalities on examination, Plaintiff generally

had normal mental status examinations, including normal speech, mood, thoughts, and orientation.  Tr. 729 (citing, e.g., Tr. 512-14, 520-22, 525-27, 530-32, 535-36).

Fifth, given the lack of objective support for the limitations, the ALJ concluded the limitations were based on Plaintiff's unreliable self report.  Tr. 729. A physician's opinion may also be rejected if it is too heavily based on a claimant's properly discounted complaints.  *Tonapetyan*, 242 F.3d at 1149.  As discussed *supra*, Ms. Belding did not provide any explanation or cite to any objective evidence in support of her opinion.  Ms. Belding's counseling notes did not contain detailed examinations, and the notes generally noted normal findings. Tr. 729 (citing Tr. 302-06, 308-10, 538-41, 545-48).  Given the lack of objective evidence, the ALJ reasonably found Ms. Belding's opinion was based on Plaintiff's self-report.  As discussed *supra,* the ALJ's finding that Plaintiff's reports were inconsistent with the evidence is supported by substantial evidence. As such, this was a germane reason to reject Ms. Belding's opinion.

Sixth, the ALJ found Ms. Belding's advocacy for Plaintiff undermined the objectivity of her opinion.  Tr. 730.  An ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Lester*, 81 F.3d at 832 (quoting *Ratto v. Secretary*, 839 F.Supp. 1415, 1426 (D.Or. 1993)) (internal citation omitted).  The ALJ found Ms. Belding assisting Plaintiff with her disability claim demonstrated a bias in her opinion.  Tr. 730.  Any error in this

ORDER - 34

consideration is harmless, as the ALJ gave other germane reasons to reject the opinion.  *See Molina,* 674 F.3d at 1115.

Lastly, the ALJ gave greater weight to the opinions of the State agency consultants, whose opinions he found more consistent with the record as a whole. Tr. 730.  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews,* 53 F.3d at 1041.  The ALJ's reliance on the State agency opinions in rejecting Ms. Belding's opinion is supported by substantial evidence as the Court finds the ALJ's other reasons for rejecting the opinion are supported by the record for the reasons discussed *supra*.  As such, the ALJ gave germane reasons to reject Ms. Belding's opinion.  Plaintiff is not entitled to remand on these grounds.

**C. Lay Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the lay opinion of Sergio B.  ECF No. 14 at 15-17.  An ALJ must consider the statement of lay witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work."  *Id*.; 20 C.F.R. §§ 404.1513, 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position

1    to observe a claimant's symptoms and daily activities are competent to testify as to

2    her condition.").  If a lay witness statement is rejected, the ALJ "'must give

3    reasons that are germane to each witness.'"  *Nguyen v. Chater*, 100 F.3d 1462,

4    1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

5         In May 2014, Plaintiff's husband, Sergio B., completed a third-party

6    function party.  Tr. 217-24.  Mr. B. stated Plaintiff fears leaving her home resulting

7    in her spending most of her time at home, she has fears she will have a heart attack,

8    she cares for their children with Mr. B.'s help, she has impaired sleep, sometimes

9    wears the same clothing and needs reminders to shower and take medication, she

10   prepares sandwiches but he helps with other cooking, she helps with some chores

11   but needs encouragement, she drives the children to school, he helps with shopping

12   and money handling, she does not regularly engage in social activities or going

13   anywhere besides medical appointments, she gets in fights with others, has

14   difficulty paying attention, following instructions, and finishing what she starts.

15   *Id.*  The ALJ gave Mr. B.'s statement minimal weight.  Tr. 728.

16        First, the ALJ found Mr. B.'s statement is inconsistent with the medical

17   evidence.  *Id.*  Inconsistency with the medical evidence is a germane reason for

18   rejecting lay witness testimony.  *See Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236

19   F.3d 503, 511-12 (9th Cir. 2001) (germane reasons include inconsistency with

20   medical evidence, activities, and reports).  The ALJ found Mr. B.'s statement is

inconsistent with medical records that demonstrate Plaintiff was able to work for several years despite her impairments.  Tr. 728.  Additionally, the ALJ noted Plaintiff had improvement with medication, and largely had normal mental status examinations.  *Id.*  (citing, e.g., Tr. 482, 500-03, 512-14, 520-22).  Mr. B.'s statement is also inconsistent with the opinions of the State agency psychological consultants, whose opinions the ALJ found were consistent with the record as a whole.  Tr. 728.  This was a germane reason to reject Mr. B.'s statement.

Second, the ALJ found Mr. B.'s statement inconsistent with Plaintiff's activities of daily living.  Tr. 728.  Inconsistency with a claimant's daily activities is a germane reason to reject lay testimony.  *Carmickle*, 533 F.3d at 1163-64; *Lewis*, 236 F.3d at 512.  As discussed *supra,* the ALJ's finding that a disabling opinion is inconsistent with Plaintiff's ability to take daily trips to provide transportation to family members and engage in a wide range of household activities is supported substantial evidence.  As such, the ALJ gave germane reasons to reject Mr. B.'s statement.  Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

ORDER - 37

1       1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2       2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is

3   **GRANTED**.

4       3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

5       The District Court Executive is directed to file this Order, provide copies to

6   counsel, and **CLOSE THE FILE.**

7       DATED November 12, 2020.

8                        _s/Mary K. Dimke_
                         MARY K. DIMKE
9            UNITED STATES MAGISTRATE JUDGE

ORDER - 38